First case today is 2-1-1-5-9-9, United States v. Mario Rafael Castillo. Will attorney for the appellant please come up and introduce yourself on the record. Good morning. May it please the court, Alejandra Bird Lopez on behalf of Mario Rafael Castillo. Can you hear me okay? Hi. Let me get the mic a little closer. There we go. May it please the court, Alejandra Bird Lopez on behalf of Mr. Mario Rafael Castillo. I'd like to ask for one minute of rebuttal if I may. You may. This case was remanded for resentencing by this court after this court had found error based on an incorrect guideline calculation. On remand, the court imposed the same 235-month sentence it had before, despite a drastically reduced guideline sentencing range of 63 to 78 months. This represented a 13-year variance, a sentence at triple the upper end of the guideline range. The sentence should be vacated because the government breached its obligations under the plea agreement by making arguments that subverted its own sentencing recommendation. The sentencing recommendation it had committed to make, and because the court failed to adequately justify the colossal upwardly variant sentence of 235 months. I'd like to first focus on the breach issue. During the government's main presentation on the case, it did not make a sentencing recommendation at all. It did not make the 180-month sentencing recommendation. It is only at the end of the hearing and after the defense had already raised the breach issue that the government made an actual recommendation for 180 months. During the sentencing hearing, though. Can I focus you in? I think one of the, what you say, one of the main offending parts of the transcript is where the government says, and just to make clear on the record, the government is bound by the plea agreement that says we cannot ask for more than 180 months. That was the same argument we made in 2018, but we were bound that, but we don't bind the court in any kind of agreement. The court is free to sentence any way that it wants. And I'm wondering if you could focus in and tell me exactly why you think those statements add up to breach under a theory of, I think, paying lip service. How does it meet the cases that we have here? Those statements and statements to that effect were repeated throughout the sentencing presentation, the government's presentation during the sentencing hearing, and it has to be viewed in that context, because the test for a breach is the totality of the circumstances. But to give a little more context, when the defense was the first to speak, and what it initially said to the court was, Your Honor, we are aware that you have the discretion to vary upwards. I see it as my, this is the reasons that we believe that you should not. And then it set out its sentencing arguments. When it was the government's turn, it continually made apologetic reference to its own limitation and the fact that its hands were tied by the plea agreement, and continually referenced the sentence that had already been imposed before, of 235 months. As soon as it stated, I'm limited by the 180-month recommendation, it immediately followed that statement with, But you are not so limited, Judge. You can go up. The victims and the family can ask for more time if they want to. So that's all true. Yes. That is true. Well, it is true. So how do you, that's the part of these cases I find hard. It's true. So how do you define, well, of course a lawyer can say what's true. So how do you know when it's this sort of lip service problem versus the lawyer's just telling the court things that are in fact true? Well, because the fact that it was stating that its hands were tied by the plea agreement, but that the court could go further, was basically an invitation to the court to go further. It was basically transmitting in so many words, I am not happy about the fact that I have to ask for 180 months, but you can do whatever you want, Judge. So I think that although those comments may have been technically true legally, in the legal sense, they were gratuitous and they were unnecessary. And they really transmitted to the court that it should go higher, that that's what it should do. It also noted that it was worried about Mr. Castillo ever getting out of prison. It noted that... But do you think at 180 months he would have ever gotten out of prison? He may not have, but it would have given him at least a better chance to get out of prison. And it's possible that if the court had understood the 180-month recommendation to actually be a recommendation, to actually be what the government believed was a fair sentence in this case, he could have considered some of the other mitigating arguments without feeling that really the government was asking for the same sentence. If I have it right, at times you're saying it was really asking for higher. Obviously if it was doing that, it was breach. If we didn't agree that there's any point at which it says I'm asking you to do a higher one, or I really think you should do higher, nonetheless it's clear in the case law there has to be a recommendation. And you don't have to advocate for it. We've said you don't have to make a strong case for it, but it has to be clear you are recommending it. Am I right in understanding you in saying that the concern is that it's just not clear he's even recommending it? Because all he's saying is there's a plea agreement I'm bound to. And there's not an affirmative statement, let alone get to advocacy or defending it, but it's just not clear he's ever saying this is my recommendation. Is that the idea? Yeah, well that's part of it. At the end of this hearing he did make the actual recommendation. That's where I was going, what do we do with that fact that there is an actual recommendation? Or put it another way, do any of our cases involve a circumstance in which we've found a breach when the prosecutor has expressly said I recommend the sentence within the agreement? Yes, I mean there are many cases where the advocate, the government, states I am recommending this sentence, I stand by the plea agreement, and that's considered to be technical compliance and lip service. And some of the ways that this court has analyzed it is to determine whether the thrust of the argument was really contrary to the actual recommendation. And I guess what I'm saying here, I take the point about he may never get out. If we thought that's in the context, though, of a fight about 78 months versus 180 months, that colloquy wouldn't necessarily show he wasn't recommending 180 months. Do we have any cases that say that the repeated statement, I'm bound, I'm bound, I'm bound, is enough to say, notwithstanding that you say I recommend the sentence, that's just lip service? Well, in Canada, this court, there was a reference in the record to being stuck with the plea agreement. And the prosecutor there said, yes, I believe I'm stuck with the plea agreement. And that was considered, in the context, those statements were considered to be part of a breach. And your take is essentially that's how this reads to you? Yes, absolutely. And the government also stated that it had occurred to it that when it was reading the transcript of the prior sentencing hearing that the court had already determined that a sentence of 235 months was consistent with the 3553A factors, and that the sentence that it was recommending was not fair and just. Could you just address the explanation part? Yes, okay. So in terms of the explanation, the court, this court has stated that any kind of really substantial variance, as was clearly in operation in this case, requires a great amount of specificity and detail to explain why it is necessary to go further than the guideline sentencing range. And to give an idea, an 180-month sentence, which was the sentence that the government was bound to request, was already a jump in eight or nine offense levels or would have represented on the sentencing table a jump of eight or nine offense levels. And a sentence of 235 months represents a jump of 11 or 12 offense levels. So I see my time is up. Do you have any questions about this issue that I can address? Well, I think you didn't answer the question, though. Okay. Well, basically, I think that the court relied principally on its restatement or rereading of some of the victim's statements and understood that the harm to the victim was basically the reason that it gave at the sentencing hearing. The government also brings up the lack of remorse, which is mentioned in the statement of reasons, which was not accessible to the parties at the time of the sentencing hearing. So we don't understand that to be part of the justification at the sentencing hearing for the sentence. Well, it was certainly said at the sentencing hearing. There was a discussion of what the defendant said to the mother. I mean, that was certainly not a surprise that that was part of the argument that was being made. Yeah, and I don't think the court made reference to that particular event, but the court did make reference to the mother's statement and the mother mentioning that he lacked remorse. So if it adopted that view, it didn't make it clear with specificity and detail in a way that would allow this court to really review why it was necessary to go up so drastically in terms of the variance. If the court has no other questions, I would wait for my rebuttal time to respond. Thank you. Okay, thank you. Thank you, counsel. Well, attorney for Appolese, please introduce yourself on the record to begin. Good morning, Your Honor. Natasha Harnell-Davis on behalf of the United States. I want to start with the breach, and then I do want to turn to the procedural reasonableness. There are three features of this case that show that the United States did not breach its plea agreement. First is the understanding of defense counsel, where on page 221, defense counsel says, the 235-month sentence is a sentence that not even the government is requesting. The district court reiterates at page 2— That's obviously the case if the baseline is the plea agreement. The question is whether during the colloquy the government breached that agreement. The government did not breach that agreement, and the government did affirmatively state at pages— But it can't just be that they say the number, because to me, you can have a wink and a nod, and here's the part that troubles me. They're talking about the 180 months. I didn't request that. But your honor is still free and unimpeded to sentence to whatever he wants between probation and life. And then the whole discussion by the lawyer is, this guy should get life. This guy, if he gets out and gets deported, he's going to harm people, wherever we send him, children. And so if you take those together, he's asking for life, which the way that's read, he thinks that's more than 180 months. So why is that not a wink and a nod, judge? Yeah, 180, I'm going to say that. But you know that life's on the table, and I've just made a whole argument about life. So do life. Sure. So the government did affirmatively make the recommendation. I just want to be clear on that. Three times. As to— Three times? Three times. So that's pages 186, 194, and 207. At page 186, it's unprompted. It's one of the first things that the government says in its response to the court. What does it say? It says the United States is bound by the plea agreement. That says we cannot ask for more than 180 months. That's a recommendation? Well, the paragraph continues. Oh. That was the same argument we made in 2018. We are bound by that, but we did not bind the court to any kind of agreement. And I think it's important— Is there any statement in there saying it recommends it? I read that as a recommendation, but if Your Honor doesn't, then I would point Your Honor to the other two times where— Let's go through the other two. Okay. So the other two, that's at page 194, where the court says—excuse me, not the court. The attorney says I, like— I can argue up to 180 months. Yeah, I can argue up to 180 months. And to be clear, that is all I'm permitted to argue for, and therefore I'm not, as a representative of the United States, asking this court for a sentence above 180 months. I didn't do that in 2018 when Your Honor sentenced him to 235. Just a conspicuous word missing in that. I recommend. Yes. Well, then I would point Your Honor— That comes up in the second one? Sure. Then I would point Your Honor to page 207, where he does say— and this gets me to a point that I do really want to make, which is, as it was in 2018, 180 months. And I think it's really important to understand the context of this case. When we look at a case like Frazier, where it's a unique procedural context, this case is coming on remand. The very first thing that defense counsel says in his statement to the court is, I want the court to understand the landscape of where we are on remand. In 2018, the United States had also said, Your Honor, you're not bound by this plea agreement. You can sentence in either direction. You can go up or you can go down. The parties understood that the government would be asking for a variant sentence. That is very clear in the plea agreement, where it says it is asking for a non-guideline sentence of 180 months. So when the government is reminding the court that following remand, where the parties had vehemently disagreed about the scope of the remand order, so this court issued an errata, the parties—it was appropriate to alert the court to the legally correct information that it could vary upwards or it could vary downwards. The fact that the government is alerting the court to the full scope of its authority is not necessarily an endorsement that it exercised that authority. No, but we're just always trying to figure out the context. And the lip service, I take it, is an important principle. Otherwise, it's in your interest that the plea agreement is understood as a real agreement and not something that you can enter into, but then you can blow it off when you get before the judge. Otherwise, people won't enter into the plea agreement. It's one of the thoughts, right? Can I add on to that point, Your Honor, which is the government had every interest in this case in recommending 180 months because that is where the appeal waiver kicked in, and it is also what would prevent the victims from having to return to court and continue to testify against— Right, and that's why we're just trying to figure out— it's a little surprising because it seems more begrudging than usual since we go through the entire colloquy before there's an affirmative statement by the prosecutor saying they actually recommend it. So in the context of that, adding to that, I guess the concern, so you can just address it, is when defense counsel is up front acknowledging that an upward variance is permissible, why in the context of statements in which all they're saying, the prosecutor's only saying I'm bound by this without actually saying I affirmably recommend it, is the prosecutor then also saying, and you could also go higher? After defense counsel has already made clear to the district court, I know you could go higher. He has to say that because he's facing 180 months. He's trying to get it at 78. So for the government to then be saying you have to go higher, what's the point of the government pointing that out? Just a small correction, Your Honor. The defense counsel was recommending the top of the guidelines range, which was 78. All the more so then, right? If he's saying I know you could vary, then why does the government need to even put variance on the table if it's bound to something that's at the top of the range? I think this goes back to kind of what's the heart of this case, which is when an attorney is saying legally correct information to the court. It's one thing to say that it's asked. It might even have another context to it, but we're trying to figure out in context was it too begrudging that it was just lip service? And I guess the context is in the context of saying only I'm bound before ever saying I recommend. After defense counsel says you could vary upward, in defending a sentence that does not require an upward variance, unprompted the prosecutor nonetheless informs the judge, and you could go higher. Why isn't that a concern that this is exactly the kind of lip service that we're concerned with? So two things. As a factual matter, the government said that the court could also go downwards, that the court could sentence anywhere from probation to life. So it was not only calling the court's attention to an upward variance. It was saying the court could also go downwards. That's also consistent with what the government said in its sentencing memo, which is at page 72. It also is consistent with what the United States said in its first sentencing. Defense counsel never considered those statements. But here's what troubles me. So 180 months is what he's supposed to ask for, but the thrust of the argument is life. I don't want this guy ever getting out of prison. And then when he describes the court's power, he says, you can do probation to life, suggesting you can do more than I can argue for, and the upper part of that is life, and I've just made a whole argument about why this guy should never get out of prison, life. So why can't I read that to be what he's really saying is, judge, do life. I'm going to say 180, but do life. So in response to that question, the government is making the comments about a life sentence in the context of responding to defense counsel's request for leniency, where defense counsel is saying basically any sentence is a pretty substantial sentence here, and you should consider that this defendant, Mr. Castillo, might pass away in prison. The government is saying that that's not an important consideration. The government isn't necessarily affirmatively asking for a life sentence or endorsing a life sentence. It's saying that the focus needs to be on the victims in this case. Just so I get to that, Pat, your take on it is defense counsel, in arguing about the concern about him dying in prison, is defending the 78 as against the 180, so that when the prosecutor then says if he dies in prison, that's not a concern, that's a defense of the 180 in context, right?   It's certainly not asking. It's an argument against the 78. Yes, exactly. So it's arguing against the request for leniency. Except when he says probation to life is what you can do, judge, that is suggesting when he puts that with the 180. He says there's 180, but you can do probation to life. Isn't he suggesting do more than the 180 then at that point? No, I don't think so. And I think that goes back to the consistency of the government's statements earlier in the 2018 sentencing, which the government refers the court back to. You can see that at page – So you would have us read life as meaning 180 here. That's what the government was really advocating for. I would make a finer distinction, Your Honor, which is that the government was asking for 180, but it was alerting the court that it could go up to the statutory maximum of life or it could go downward to probation. And that in the context of the description about him not getting out of prison, that's a defense of the 180 because it's responding to why 78 would be too rough. Exactly. I want to briefly address this. And what do you do about the fact that in that passage that you're asking us to read, if it's about the 180 and not the life, never in that entire passage is there a case of 180. I think that he is saying that – the government is saying that it can argue for a sentence of up to 180. I don't – when we look at cases like Saxena – and I can see I'm out of time. Can I respond to – Yeah. Okay. When we look at cases like Saxena where the government does use language like I am permitted to, I am bound by, this court hasn't necessarily considered that to be begrudging language or an indication of breach. It, again, is a statement of fact. You can see at the first sentencing, defense counsel uses very similar language and says, I am permitted to argue for a sentence of 78 months. Simply prefacing the recommendation or the statement of what I can recommend up to with I am permitted, I am bound, is not necessarily an indication of breach. I did hope to address this procedural reasonableness, but I'm out of time. It would be helpful if you did. Okay. So very briefly on the procedural reasonableness, I would direct this court to page 216 of the record where the court gives a very clear reason for why it is imposing an upwardly variant sentence, which is the statements from the mother, which it reads into the record, the statements from the victim. It also acknowledges that the victim was unable to actually make her statement. I don't think it comes through in the cold record, but you can tell that it's a very emotional moment for the victim. So the government, excuse me, the district court says, the lifelong impact on FM2 cannot be measured and continues to say, this abuse is traumatic and greatly compounded by the fact that it was at the hands of her own grandfather who was there to take care of them. It also noted the effect on the victim in terms of her mental health. And in that sense, I think this case is very similar to Ruiz-Cuerta, where this court focused on the young age of the victim. In that case, the victim was nine, and here I think she was around four. The ongoing mental health effects, the fact that this was supposed to be a caretaker, a grandfather, all of that goes to explain why this was an upwardly variant sentence. Thank you. Thank you, Counsel. Attorney for Appellant, please come up and reintroduce yourself on the record. You have a one-minute rebuttal. Thank you. Alejandra Bird Lopez again on behalf of Mr. Castillo. So the fact that the government was arguing for an upwardly variant sentence, I mean, this is not a case where we are saying that putting aggravating facts on the record of the sentencing is the breach. Here the breach is the constant and unabating reference to the limits on the request that the government was able to make to the sentencing court and the unabating reference to the prior sentence. And when you read the record as a whole and not each of the statements in isolation, I think that it's clear that the thrust of the argument was that it was asking for the court to reimpose the 235-month sentence, including a statement by the government that its own sentencing memorandum and the arguments and facts in there supported any sentence that the court might want to impose. And to be blunt, this court did not need to be reminded that it could upwardly vary. We would rest on the briefs unless there's any other questions. Thank you. Thank you. That concludes arguments in this case.